```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MILTON BRATEN,                                    :
                                                  :
                          Plaintiff,              :
                                                  :    07 Civ. 8498 (HB)
            - against -                           :
                                                  :    OPINION & ORDER
ELIOT KAPLAN,                                     :
                                                  :
                          Defendant.              :
------------------------------------------------------------------------x
```

**Hon. HAROLD BAER, JR., District Judge**[*]:

      Plaintiff Milton Braten ("Plaintiff"), proceeding *pro se*, brings this suit against his former attorney, Eliot Kaplan ("Defendant") for legal malpractice. Plaintiff's complaint asserts that this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a). Presently before the court is Defendant's motion to dismiss the complaint on the grounds that the parties lack diversity of citizenship. For the reasons that follow, the Plaintiff has failed sufficiently to allege that parties are of diverse citizenship and therefore this action is dismissed.

## I. FACTUAL BACKGROUND

      Plaintiff commenced this proceeding on May 10, 2007 by filing his initial *pro se* complaint with the court. The complaint was reviewed and the Court issued an order on October 2, 2007 directing Plaintiff to submit an amended complaint within sixty days providing further facts in relation to the citizenship of the parties and the amount in controversy (the "60-Day Order"). Plaintiff then filed an amended complaint on November 30, 2007 asserting a legal malpractice claim against Defendant arising out of Defendant's representation of Plaintiff in his divorce proceeding in 2003. Plaintiff's malpractice claim is premised on numerous theories, including attorney misconduct in violation of legal and ethical obligations, fraudulent representation, breach of contract, unjust enrichment and conversion of funds. (Am. Compl. ¶¶ 35-37, 38-40, 41-43, 44-46, 70.) The crux of Plaintiff's allegations in the Amended Complaint is that he was deprived of maintenance and support from his now ex-wife, to which he claims to

---

[*] Brittany Nilson, a Spring 2009 intern in my Chambers and a second-year law student at Brooklyn Law School, provided substantial assistance in the research and drafting of this opinion.

1

have been entitled, as a result of Defendant's failure to work zealously on his behalf and Defendant's alleged rejection of a settlement offer without Plaintiff's consent.  (Am. Compl. ¶¶ 32, 37(b).)

As each of Plaintiff's claims arises under substantive state law, he contends that this Court has jurisdiction over this suit on the grounds of diversity of citizenship.  There is no dispute that Defendant is a citizen of New York.  (Am. Compl. ¶ 6.)  Prior to incarceration, Plaintiff was a resident and domiciliary of New York.  (Am. Compl. ¶ 5(a).)  Plaintiff was then incarcerated at the Federal Medical Center in Devens, Massachusetts, where he continued to be housed at the time the Amended Complaint was filed.  (Am. Compl. ¶ 5(b).)  Plaintiff admits that prior to his incarceration he was a New York domiciliary, but argues that since his incarceration, he has changed his domicile to Massachusetts and that Massachusetts was his domicile at the time the Amended Complaint was filed.  (Am. Compl. ¶ 5.)  Plaintiff contends that he intended to change his domicile to Massachusetts because at the time he was incarcerated there, he was under the care of medical professionals affiliated with the University of Massachusetts Worcester Hospital in Massachusetts, and upon his release, he intends to return to Massachusetts to continue his care at that facility.  (Am. Compl. ¶ 5(b)-(c).)  Plaintiff also highlights the fact that his divorce proceeding left him with no assets, residence or business in New York and thus he has no incentive to return to New York after his incarceration.  (Am. Compl. ¶ 5(a).)  Since the commencement of this action, Plaintiff has been transferred to the Columbia Care Center in Columbia, South Carolina.

## II. DISCUSSION

Although Defendant brings this motion under Fed. R. Civ. P. 12(c) for a judgment on the pleadings,[1] the heart of his argument is that the court lacks subject matter jurisdiction over this

---

[1] Defendant filed his Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on August 25, 2008.  Plaintiff filed his opposition in the form of a letter-affidavit on December 1, 2008 by depositing the document in the prison mail system on that date.  On December 18, Defendant filed his reply in further support of his motion.  Plaintiff subsequently requested leave to file a surreply to respond to Defendant's reply memorandum.  Because neither the Federal Rules of Civil Procedure nor the Local Civil Rules of this Court authorize litigants to file surreplies, the Court will consider the matter before it based only on the initial motion, opposition and reply.  *See Kapiti v. Kelly*, 07 Civ. 3782 (RMB)(KNF), 2008 U.S. Dist. LEXIS 20135, at *3-4 n.1 (S.D.N.Y. Mar. 12, 2008) ("Allowing parties to submit surreplies is not a regular practice that courts follow, because such a procedure has the potential for placing a court in the position of refereeing an endless colley of briefs.") (internal quotation and citation omitted); *Clark v. City of Oswego*, 03-CV-202 (NAM/DEP), 2006 U.S.

action.  Indeed, the vast majority of the authorities cited in support of Defendant's motion arose in the context of motions to dismiss for lack of federal subject matter jurisdiction pursuant to Federal Rule 12(b)(1).  Therefore, the Court will decide the motion based on the applicable Rule 12(b)(1) law.  It should be kept in mind that "federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction. . . [F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*."  *Lyndonville Savings Bank & Trust Co. v. Lussier & Applied Research and Dev., Inc.*, 211 F.3d 697, 700-01 (2d Cir. 2000).

In considering this question, the Court is mindful that Plaintiff has at all times appeared in this action *pro se*, and therefore the Court is "required . . . to give [Plaintiff] substantial leeway."  *See Gomes v. Avco Corp.*, 964 F.2d 1330, 1335 (2d Cir. 1992); *see also Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) ("A party appearing without counsel is afforded leeway in meeting the procedural rules governing litigation, and trial judges must make some effort to protect a party so appearing from waiving a right to be heard because of his or her lack of legal knowledge."); *LaBounty v. Adler*, 933 F.2d 121, 122 (2d Cir. 1991) ("We are obliged to construe [*pro se*] pleadings and papers liberally."); *Bethelmie v. New York City Health & Hosps. Corp.*, 00 Civ. 3707 (FM), 2001 U.S. Dist. LEXIS 10807, at *4 (S.D.N.Y. July 31, 2001); *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999).  As the Second Circuit recently has instructed, "a party appearing without counsel is afforded extra leeway in meeting the procedural rules of litigation," and "courts should not allow a pro se litigant's rights to be impaired by harsh application of technical rules."  *Sims v. Blot*, 534 F.3d 117, 133 (2d Cir. 2008) (internal quotations and citations omitted).  Thus, the Court construes Plaintiff's opposition to Defendant's motion "to raise the strongest arguments they suggest."  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  The Court therefore declines Defendant's invitation to treat Plaintiff's affidavit in opposition to the motion as defective under Local Rule 7.1 and to grant Defendant's motion on default, or as time-barred for having been filed one day after the deadline set forth in the 60-Day Order.[2]  However, the Court is nonetheless bound to construe the Amended

---

Dist. LEXIS 95769, at *25 n.9 (N.D.N.Y. Mar. 26, 2007) (citing *In re Vouzianas*, 259 F.3d 103, 108 n.2 (2d Cir. 2001)).

[2] The Amended Complaint states, at ¶ 3, that it was filed by placing it in the prison mail system on November 30, 2007, in accordance with Rule 3 of the Federal Rules of Civil Procedure.  Defendant argues that, in fact, the Amended Complaint was not filed until December 1, the next day, because that is

Complaint reasonably, and Plaintiff is still bound by substantive law. *See Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) (the right to proceed *pro se* is not "a license not to comply with relevant rules of procedural and substantive law"); *LoCurto v. LoCurto*, No. 07 Civ. 8238, 2008 WL 4410091, at *5 n.5 (S.D.N.Y. Sept. 25, 2008).

A.     **Legal Standard**

Under Rule 12(b)(1), the Court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff.[3] *Jaghory v. New York State Dep't of Ed.*, 131 F.3d 326, (2d Cir. 1997). Federal courts are courts of limited jurisdiction and may not entertain matters over which they do not have subject matter jurisdiction. *Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001). "If the court determines at any time that it lacks subject matter jurisdiction, the court *must* dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added).

Under 28 U.S.C. § 1332, a district court will have subject matter jurisdiction over a civil action "when the matter in controversy exceeds $75,000 and is between citizens of different states." 28 U.S.C. § 1332(a)(1). The party seeking to invoke jurisdiction under § 1332 bears the burden of demonstrating that the grounds for diversity exist. *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1997). The policy behind § 1332 requires that it be strictly construed against finding jurisdiction. *See Farrell v. Ashton*, No. 89 Civ. 6706, 1991 WL 29261, at *4 (S.D.N.Y. Feb. 28, 1991) (citing *Healy v. Ratta*, 292 U.S. 263, 270 (1934)).

An individual's citizenship is determined by his domicile, which is established by where he is born and is presumed to continue absent sufficient evidence that the individual's domicile has changed. *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000); *Blumatte v. Quinn*, 521 F. Supp. 2d 308, 310 (S.D.N.Y. 2007). Domicile refers to "the place where a party

---

the date with which the envelope containing the Amended Complaint was stamped by the prison. Thus, Defendant argues that this action is time-barred for failure to file the Amended Complaint within the period allowed under the 60-Day Order. As noted above, however, the Court declines to draw such harsh lines that would deprive the *pro se* Plaintiff of the right to pursue his claims. Therefore, drawing all inferences in favor of the Plaintiff, the Court finds that the Amended Complaint was timely filed and that this action is not time-barred.

[3] Because the Court is bound to accept all well-pleaded allegations as true, it declines to adopt Defendant's view that it should make findings as to the credibility of Plaintiff's Amended Complaint and affidavit based "Plaintiff's well documented history of fraud and deception."

4

has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Palazzo*, 232 F.3d at 42; *see also Sash v. Schwartz*, No. 04 Civ 9634, 2007 WL 30042, at *5 (S.D.N.Y. Jan. 4, 2007). For the purposes of determining whether diversity of citizenship exists, an individual's domicile is established at the time the suit is filed. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 574 (2004); *Housand v. Heiman*, 594 F.2d 923, 926 n.6 (2d Cir. 1979); *Sash*, 2007 WL 30042, at *4; *Fermin v. Moriarty*, No. 96 Civ. 3022, 2003 WL 21787351, at *2 (S.D.N.Y. Aug. 4, 2003) (citing *Freeport-McMoRan v. KN Energy, Inc.*, 498 U.S. 426, 428-29 (1991)).

To effect a change of domicile, two elements are required: first, residence or physical presence in the new domicile; and second, the intent to remain there indefinitely. *Palazzo*, 232 F.3d at 42; *Gutierrez v. Fox*, 141 F.3d 425, 428 (2d Cir. 1998); *Sash*, 2007 WL 30042, at *5 (citing *Gilbert v. David*, 235 U.S. 561, 569 (1915)). A party attempting to prove a change in domicile so that a federal court has diversity jurisdiction bears the burden of proving such change by clear and convincing evidence. *Palazzo*, 232 F.3d at 42; *Blumatte*, 521 F. Supp. 2d at 310-11; *Farrell*, 1991 WL 29261, at *5 (finding when a party is asserting a change in domicile, the burden of proof is clear and convincing evidence in accord with the general presumption against the existence of federal subject matter jurisdiction). To determine whether the party seeking to establish a change in domicile has satisfied this burden, courts may look to a number of factors, including the person's state of residence; the state where his family resides; whether he owns or rents property; or where he keeps his personal belongings, exercises his political rights, maintains religious or social affiliations, pays taxes or holds a driver's license. *Farrell*, 1991 WL 29261, at *2. None of these factors can establish domicile conclusively; rather, a court must "examine the range of a person's conduct to draw the necessary inferences as to the relevant intent" to establish a domicile. *Id.*

It is well-settled that a prisoner retains his pre-incarceration domicile. *E.g.*, *Poucher v. Intercounty Appliance Corp.*, 336 F.Supp.2d 251, 253 (E.D.N.Y. 2004); *Fermin*, 2003 WL 21787351, at *2. That is, it is presumed that a prisoner does not acquire a new domicile simply as a result of his incarceration in a state different from his pre-incarceration domicile, because a prisoner is present in the state only as a result of compulsion and not an intent to remain there indefinitely. *LoCurto*, 2008 WL 4410091, at *5; *Fermin*, 2003 WL 21787351, at *2; *see also Blumatte*, 521 F. Supp. 2d at 311 (requiring presence for the purpose of establishing domicile to

be voluntary).  However, the Second Circuit has held, along with three of its sister circuits, that this presumption is rebuttable and the prisoner may attempt to establish a new domicile in the state of his incarceration.  *Housand*, 594 F.2d at 926 n.5 (embracing the "more recent trend . . . in the direction of allowing a prisoner to try to show that he has satisfied the prerequisites for establishing domicile in the place of his incarceration); *see also Sullivan v. Freeman*, 944 F.2d 334, 337 (7th Cir. 1991) (Posner, J.); *Jones v. Hadican*, 552 F.2d 249, 251 (8th Cir. 1977) (While retaining the usually valid presumption that a prisoner retains his pre-incarceration domicile, [the rebuttable presumption rule] is sufficiently flexible to allow a prisoner to show truly exceptional circumstances which would justify a finding that he has acquired a new domicile at the place of his incarceration."); *Stifel v. Hopkins*, 477 F.2d 1116, 1126 (6th Cir. 1973) ("We recognize the importance of considering physical or legal compulsion in determining whether domicile is gained or lost, but we limit the application of involuntary presence to its operation as a presumption ordinarily requiring more than unsubstantiated declarations to rebut."); *accord Poucher*, 336 F. Supp. 2d at 253-54; *Fermin*, 2003 WL 21787351, at *2.  To determine the validity of a prisoner's intent to change domicile, the court may consider factors such as the possibility of parole and the manner in which the prisoner conducts his business and personal transactions.  *Stifel*, 477 F.2d at 1127.  In addressing the "exceptional circumstances" that warrant a change of an incarcerated party's domicile, the Sixth Circuit in the oft-cited case *Stifel v. Hopkins* found that the prisoner succeeded in showing a change in domicile because he had demonstrated his intent not to return to his pre-incarceration domicile.  *See id.* at 1126-27.  This finding was based in large part on the fact that he was sentenced to life without parole, and in any event, even if he were to be paroled, he did not intend to return to his pre-incarceration community because he was subject to great scorn and hostility there due to the publicity given to his conviction and heinous nature of the crime for which he was convicted.  *Id. at* 1126, 1127 n.7.

**B.     Plaintiff Has Not Established a Change in Domicile**

In the present case it is undisputed that, prior to incarceration, Plaintiff was a New York domiciliary.  (Am. Compl. ¶ 5(a).)  Plaintiff was then incarcerated at the Federal Medical Center in Devens, Massachusetts, where he continued to be housed at the time the Amended Complaint was filed.  (Am. Compl. ¶ 5(b).)  Plaintiff alleges that his domicile is not New York, where he

was domiciled prior to his incarceration, but rather Massachusetts, his first place of incarceration. In support of his argument, Plaintiff claims that as a result of his divorce proceeding, he was stripped of all property and possessions in New York and he no longer has a business or friends in New York. (Am. Compl. ¶ 5(a).) Further, Plaintiff contends that he is of an advanced age and confined to a wheelchair and thus requires medical attention. (Am. Compl. ¶ 5(b).) Plaintiff was receiving medical attention from doctors in Massachusetts at the time of filing and accordingly, he asserts that he intends to stay in Massachusetts after his release so that he can continue to seek medical attention from the same providers. (Am. Compl. ¶ 5(b).) Finally, Plaintiff argues that he has no incentive to return to New York after his release given his medical needs and his lack of a residence or assets in New York. (Am. Compl. ¶ 5(c).)

Pursuant to the law of this Circuit, there is a presumption, though rebuttable, that Plaintiff's domicile during his incarceration and at the time the Amended Complaint was filed was in New York. *See Housand*, 594 F.2d at 926 n.5. Plaintiff's attempt to rebut this presumption in the Amended Complaint is insufficient to prove by clear and convincing evidence that he has made Massachusetts his new domicile. First, Plaintiff's divorce, the result of which was to divest Plaintiff of property in New York, does not in itself establish that Plaintiff intended to abandon his New York domicile. For example, in *Mugan v. McGuire Law Firm*, No. C 06-3054, 2007 WL 1097564 (N.D. Iowa Apr. 12, 2007), the incarcerated plaintiff, like Plaintiff here, attempted to rebut the presumption of retaining his pre-incarceration domicile by arguing that his wife had divorced him and he no longer had property in his former domicile and he had changed his address with the Bureau of Prisons to reflect an address in a new state. *Id* at *4. The court held that owning no property in the prisoner's last known domicile as the result of divorce proceedings was insufficient to rebut the presumption that his pre-incarceration domicile is his current domicile. *Id.* The *Mugan* court found that to rebut the presumption of pre-incarceration domicile, a prisoner must introduce more than unsubstantiated declarations. *Id.*; *see also Farrell*, 1991 WL 29261, at *1 ("Although intent is crucial to domicile, mere subjective statements of affiliation with a particular state or of intent to make it one's home cannot suffice for a finding of state citizenship if such statements are belied by objective indicia of actual residence and intent.").

Plaintiff argues that he is under medical care and wishes to continue with this medical care in Massachusetts. This, too, is insufficient to satisfy Plaintiff's burden of proving by clear

and convincing evidence that his new domicile is Massachusetts. The fact that at the time of filing Plaintiff received medical care from the doctors in Massachusetts does little more than establish that Plaintiff was incarcerated in Massachusetts and therefore if he required medical treatment, he would receive it in that state. In *Fermin*, the court faced with facts similar to those before the Court here, held that a prisoner who was incarcerated in Pennsylvania, received his mail there, made phone calls there, saw his family there, *received medical care there* and received an educational certificate there did not establish that he intended to live in Pennsylvania, only that he was incarcerated in Pennsylvania. 2003 WL 21787351, at *3. Similarly, Plaintiff here offers evidence only that he was receiving medical care in Massachusetts, where he resided as a result of his incarceration at the time he filed his Amended Complaint. Plaintiff does not offer any further evidence that the medical care he was receiving at the time of filing was unique or would compel him to stay in Massachusetts for any other reason. Nor does Plaintiff allege any other ties to Massachusetts that would substantiate his intention to remain in Massachusetts. Thus, Plaintiff alleges nothing more than he was incarcerated in Massachusetts at the time of filing, and has therefore failed to establish that he changed his domicile to Massachusetts after incarceration.

      Indeed, the fact that Plaintiff has been transferred to a facility in South Carolina belies his argument that he has become a Massachusetts domiciliary as the result of the medical care he received while incarcerated there. Plaintiff, as a man of advanced age and being confined to a wheelchair, will most likely be receiving medical treatment at the South Carolina facility. If Plaintiff's reasoning as to his purported Massachusetts domicile were accepted, then it would follow that his domicile subsequently has changed again automatically by virtue of his transfer to the Carolina Care Center. This type of transient notion of domicile directly contradicts the policy behind the concept of domicile. *See Farrell*, 1991 WL 29261, at *4 (finding that the diversity statute requires strict construction against finding jurisdiction on the grounds that there is a presumption in favor of one's original domicile). Unlike the prisoner in *Stifel*, who was able to rebut the presumption in favor of his pre-incarceration domicile by demonstrating that he was unlikely to be paroled, and that in any event, the heinous nature of his crime and the publicity it engendered in his pre-incarceration domicile created a hostile environment to which he would never return, here Plaintiff has not established that New York is an unfit domicile or that other circumstances demonstrate that his domicile has changed. *See Stifel*, 477 F.2d at 1126.

Therefore, Plaintiff has not proven by clear and convincing evidence that he has changed his domicile from New York to Massachusetts.

## II.  CONCLUSION

For the foregoing reasons, the Amended Complaint fails sufficiently to allege diversity of citizenship.  Therefore, Plaintiff's Amended Complaint is DISMISSED.  The Clerk of the Court is instructed to close this case and all motions and remove this matter from my docket.

**IT IS SO ORDERED.**
**New York, New York**
**March ___, 2009**

                                                                        **U.S.D.J.**

Therefore, Plaintiff has not proven by clear and convincing evidence that he has changed his domicile from New York to Massachusetts.

## II. CONCLUSION

For the foregoing reasons, the Amended Complaint fails sufficiently to allege diversity of citizenship. Therefore, Plaintiff's Amended Complaint is DISMISSED. The Clerk of the Court is instructed to close this case and all motions and remove this matter from my docket.

**IT IS SO ORDERED.**
**New York, New York**
**March 10, 2009**

_____
U.S.D.J.

9